**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ALBANY MEDICAL COLLEGE,**

                  **Plaintiff,**            **1:13-cv-108**
                                              **(GLS/RFT)**

      **v.**

**SMITHS MEDICAL ASD, INC.,**

                  **Defendant.**
_____

**APPEARANCES:**                **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Heslin, Rothenberg Law Firm      NICHOLAS MESITI, ESQ.
5 Columbia Circle                   BRETT M. HUTTON, ESQ.
Albany, NY 12203

**FOR THE DEFENDANT**:
Morgan, Lewis Law Firm          J. KEVIN FEE, ESQ.
1111 Pennsylvania Avenue N.W.
Washington, DC 20004

**Gary L. Sharpe**
**Chief Judge**

## <u>MEMORANDUM-DECISION AND ORDER</u>

### I. <u>Introduction</u>

Plaintiff Albany Medical College (AMC) commenced this action

against defendant Smiths Medical ASD, Inc. for alleged infringement of four

of AMC's patents involving the design and use of a safety intravenous

catheter assembly and method for use with a needle. (*See generally* Am. Compl., Dkt. No. 7.) Following the parties' request for the construction of several disputed terms[1] in the four patents in suit, the court referred the matter to Magistrate Judge David E. Peebles for a *Markman*[2] hearing. (Dkt. Nos. 22, 24, 26, 27.) After conducting a hearing on March 19, 2014, and in a Report and Recommendation (R&R) filed July 9, 2014, Judge Peebles recommended constructions for what the parties have labeled the "notch-related terms," the "notch clip-related terms," and the "means terms." (Dkt. No. 40.) Pending are Smiths' objections to the R&R. (Dkt. No. 42.) Largely for the reasons articulated by Judge Peebles, and for the reasons that follow, the R&R is adopted in its entirety.

## II. Standard of Review

Before entering final judgment, this court reviews report and recommendation orders in cases it has referred to a magistrate judge. If a

---

[1] As noted by Judge Peebles, this District's local patent rules impose a limit of ten on the number of terms that may be presented to the court for claim construction, absent prior leave of court. (Dkt. No. 40 at 15 n.4 (citing N.D.N.Y. L.R. Proc. Pat. 4.4(b).) The parties here instead sought construction of three groups of claims, totaling more than ten terms or phrases. (Dkt. No. 22, Attach. 1.) Nevertheless, in the interest of justice, the court adopts the recommendation of Judge Peebles, (Dkt. No. 40 at 15 n.4), and will permit the parties' submissions here.

[2] *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995), *aff'd* 517 U.S. 370 (1996).

party properly objects to a specific element of the magistrate judge's findings and recommendations, this court reviews those findings and recommendations *de novo*. *See Almonte v. N.Y. State Div. of Parole*, No. Civ. 904CV484GLS, 2006 WL 149049, at *3, *5 (N.D.N.Y. Jan. 18, 2006). In those cases where no party has filed an objection, only vague or general objections are made, or a party resubmits the same papers and arguments already considered by the magistrate judge, this court reviews the findings and recommendations of the magistrate judge for clear error. *See id.* at *4-5.

## III. **Discussion**

Smiths has filed objections to Judge Peebles' recommendations as to each group of disputed terms.[3] (Dkt. No. 42 at 3-11.) In response to Smiths' objections, AMC argues that Judge Peebles' recommendations were appropriate and should be adopted by this court. (Dkt. No. 43 at 3-9.) The court will address each of the term groupings, and the respective recommended constructions to which Smiths has objected, below.

─────────────────

[3] In its objections, Smiths indicates that it also "moves for reconsideration" of the R&R. (Dkt. No. 42 at 1.) However, it is clear from its submission that Smiths has filed proper objections to the R&R, and has not argued any of the applicable bases for a motion for reconsideration. *See Johnson v. Lynn-Caron*, No. 9:11-CV-0386, 2012 WL 3888175, at *4 (N.D.N.Y. Sept. 7, 2012). As such, to the extent Smiths seeks reconsideration of the recommendations in the R&R, such a request is inappropriate and denied.

## A.    <u>Notch-Related Terms</u>

Smiths has objected to Judge Peebles' recommended constructions of the notch-related terms, arguing that its "proposed construction requiring the notch to be a 'cut-out' does *not* introduce a process limitation into the implicated claims nor does it limit the manner in which the notch may be formed," and therefore "notch" should be construed to be a "cut-out."  (Dkt. No. 42 at 8-10.)  This is contrary to Judge Peebles' recommended construction that "'notch' be given its ordinary and customary meaning, and construed . . . as 'an indentation in an edge or across an inner surface of the catheter hub.'"  (Dkt. No. 40 at 20.)  Smiths also argues that Judge Peebles erred in not construing "notch" to have any particular shape, despite its contention that a circumferential notch should be limited to the shape of a semi-circle.  (Dkt. No. 42 at 10-11.)

Both arguments were directly raised by Smiths before the magistrate judge both in its claim construction briefing, (Dkt. No. 27 at 6-8; Dkt. No. 39 at 3-5), and at the *Markman* hearing, (Dkt. No. 44 at 39-49), and are ones that Judge Peebles considered when making his recommendations.  These arguments thus merit only a clear error review.  *See Almonte*, 2006 WL 149049, at *4.   After reviewing Judge Peebles' recommended

constructions of the notch-related terms for clear error, the court has found none, and adopts the recommended constructions.  With respect to Smiths' argument that the term "notch" should include language to the effect that it is a "cutout," it claims, as it did during the *Markman* hearing, that it is not attempting to "import a process into the claim construction" by defining "notch" as a "cutout."  (Dkt. No. 44 at 39-40.)  However, as Judge Peebles noted, utilizing Smiths' proposed claim construction, although it does not explicitly reference the process by which the "notch" is formed, would purport to imply, or at least suggest, that a "notch" is limited to that which results from the act of cutting out material, a limitation which Judge Peebles found was not supported by the intrinsic or extrinsic evidence of record.  (Dkt. No. 40 at 18-20.)  As stated in the R&R, "it is not proper to read a process limitation in an apparatus claim when no such limitation is presented by the patent claims, patent specification, or prosecution history."  (*Id.* at 19 (citing *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1344 (Fed. Cir. 2008).)

Smiths further argues that the R&R "appears to misstate [its] position" when it references Smiths' argument that the shape of the notch is limited to a semi-circle only, because Smiths is in fact only arguing that

circumferential notches are semi-circle shaped, not all notches. (Dkt. No. 42 at 9-11.) However, after noting that there was no intrinsic evidence "suggest[ing that] the inventors intended to limit the shape of the notch specified to a semi-circle," (Dkt. No. 40 at 22), and thus refusing to limit the construction of the term "notch" to a semi-circle only, Judge Peebles continued his discussion, and indicated that the addition of the word "circumferential" did not impose the semi-circle-only limitation sought by Smiths, (*id.* at 23-26). Rather, it referred to the notch's continuing "fully around the inner portion of the catheter hub," and not to the particular shape of the notch. (*Id.* at 23-26.) Accordingly, the court finds that this recommendation is not clearly erroneous, and adopts it.

**B.    Notch Clip-Related Terms**

As to the notch clip-related terms, and in particular, the relationship between the "notch clip" and the "needle cover," Judge Peebles recommended that no further construction is required, as the terms utilized in the patents' language to describe their interrelationship, for example "including," "having," "joined with," and "disposed in," were commonly understood terms. (Dkt. No. 42 at 28-33 & at 31 n.6.) In doing so, he recommended rejecting Smiths' proposed constructions, which purport to

"require that the notch clip be attached to the needle cover by a resilient arm." (*Id.* at 33.) Smiths objects to this recommendation, simply stating that the parties dispute the construction of these terms, and that the terms require construction by the court because they remain ambiguous. (Dkt. No. 42 at 5-8.)

When faced with "an actual dispute regarding the proper scope" of a patent claim, the court must construe the allegedly infringed claim to determine its meaning and scope. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008). In so doing, the court is cognizant that unless the patentee "acts as his own lexicographer" or "disavows the full scope of a claim term either in the specification or during prosecution," the words of a claim are "given their plain and ordinary meaning [as understood by] one of skill in the art." *See Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365-67 (Fed. Cir. 2012). When "the meaning of a claim term as understood by persons of skill in the art is not readily apparent," the court must construe the disputed claim terms in order to resolve such disputes. *O2 Micro*, 521 F.3d at 1360.

Here, as discussed in the R&R, these terms are not "complex or difficult to understand in the context of the [patent] claims and the

specification," and therefore require no further construction. (Dkt. No. 40 at 28-33 (citing, *inter alia*, *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005).) Additionally, "[n]othing in the [intrinsic evidence] reflect[s] an intent on the part of the inventors to limit their invention to a notch clip attached to the needle cover by a resilient arm," as Smiths advocates, making its proposed construction "inappropriate." (*Id.* at 31-32.) Accordingly, the court adopts the recommended constructions of these terms.

**C.    Means Terms**

Lastly, with respect to the "means" terms, Smiths argues that the recommended constructions "impermissibly broaden[ ] the scope" of the relevant terms by defining the "resilient means" term as simply a "notch clip," as this permits a notch clip to be joined to the needle cover by a non-resilient arm, while Smiths contends that the term only encompasses the use of a resilient arm. (Dkt. No. 42 at 3-5.) This argument significantly overlaps with Smiths' argument with respect to the notch clip-related terms, and, as discussed by Judge Peebles, (Dkt. No. 40 at 33-43), and by this court above, *supra* Part III.B., the evidence of record does not support limiting the construction of "notch clip" to only that which utilizes a resilient

arm.[4]  Accordingly, for the same reasons discussed above, the court

adopts the recommended constructions of the means terms.  Having

reviewed the remainder of Judge Peebles' R&R for clear error, and finding

none, and for the reasons outlined in the sections above, the court accepts

and adopts Judge Peebles' claim construction R&R in its entirety.

### IV.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Magistrate Judge David E. Peebles' July 9, 2014

Report and Recommendation (Dkt. No. 40) is **ADOPTED** in its entirety; and

it is further

**ORDERED** that the following meanings shall be affixed to the patent

claim terms in dispute:

| <u>Disputed Term</u> | <u>Construction</u> |
| --- | --- |
| A continuous circumferential notch extending outwardly in the first axial bore of the catheter hub | "a continuous circumferential indentation in an edge or across an inner surface of the catheter hub extending outwardly in the |

---

4 In its response to Smiths' objections, particularly Smiths' argument that "the disputed term expressly requires a '*resilient* means cooperating with said needle for locking,'" (Dkt. No. 42 at 3 (quoting Dkt. No. 40 at 43)), AMC notes that, "[f]or clarification purposes," it "would not object to . . . clarifying the construction of the corresponding structure of the 'resilient means' to be a 'resilient notch clip.'" (Dkt. No. 43 at 4.)  While the parties' dispute centers on whether or not the notch clip must contain a resilient arm, they nonetheless appear to agree that the notch clip must be resilient, and the court has therefore included this in its construction.

| | |
|---|---|
| | first axial bore of the catheter hub" |
| An outward extending notch in a catheter hub | "an outward extending indentation in an edge or across an inner surface of the catheter hub" |
| Wherein the notch is a continuous circumferential notch | "a continuous circumferential indentation in an edge or across an inner surface of the catheter hub" |
| A notch extending outwardly in the first axial bore of the catheter hub | "an indentation in an edge or across an inner surface of the catheter hub extending outwardly in the first axial bore of the catheter hub" |
| An outward extending notch in a catheter hub | "an outward extending indentation in an edge or across an inner surface of the catheter hub" |
| A notch extending outwardly in said axial bore | "an indentation in an edge or across an inner surface of the catheter hub extending outwardly in the first axial bore of the catheter hub" |
| A notch extending outwardly in the axial bore | "an indentation in an edge or across an inner surface of the catheter hub extending outwardly in the first axial bore of the catheter hub" |
| A notch therein (as used in both the '033 patent and the '206 patent) | "an indentation in an edge or across an inner surface of the catheter hub" |

| | |
|---|---|
| A notch having a longitudinal length | "an indentation in an edge or across an inner surface of the catheter hub having a longitudinal length" |
| Notch clip | No further construction required |
| A notch clip joined with the needle cover | No further construction required |
| The needle cover including a notch clip | No further construction required |
| A needle cover having a notch clip (as used in both the '033 patent and the '206 patent) | No further construction required |
| A notch clip disposed in a catheter hub | No further construction required |
| A needle cover having a notch clip, said notch clip comprising a resilient material | No further construction required |
| A needle cover having a notch clip and a first passageway extending therethrough for receiving said needle, said notch clip comprising a resilient material (as used in both the '033 patent and the '206 patent) | No further construction required |
| A notch clip positionable to engage the notch of the catheter hub (as used in both the '206 patent and the '814 patent) | No further construction required |

| Means for selectively maintaining a notch clip adjacent the needle | Function: "selectively maintaining a notch clip adjacent the needle" Structures: notch, needle, needle cover, catheter hub |
| Resilient means cooperating with said needle for locking said needle cover to said catheter hub and for offering resistance from obstruction of said first passageway | Function: "cooperating with said needle for locking said needle cover to said catheter hub and offering resistance from obstruction of said first passageway" Structure: resilient notch clip |

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

January 5, 2015
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court